Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Vivek Kothari (Cal. Bar No. 262842)
vivek@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Georgianne McCaskill, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>Goose Creek Candles LLC,<br><br>*Defendant*. | Case No. 5:25-cv-01924<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## Table of Contents


I. Introduction. 1

II. Parties. 2

III. Jurisdiction and Venue. 2

IV. Facts. 3

A. Defendant's fake sales and discounts. 3

B. Defendant's advertisements are unfair, deceptive, and unlawful. 14

C. Defendant's advertisements harm consumers. 15

D. Plaintiff was misled by Defendant's misrepresentations. 17

E. Defendant breached its contract with and warranties to Ms. McCaskill and the putative class. 19

F. No adequate remedy at law. 20

V. Class Action Allegations. 21

VI. Claims. 23

First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq. 23

Second Cause of Action: Violation of California's Consumer Legal Remedies Act (By Plaintiff and the California Class) 25

Third Cause of Action: Violation of California's Unfair Competition Law 27

Fourth Cause of Action: Breach of Contract 29

Fifth Cause of Action: Breach of Express Warranty 30

Sixth Cause of Action: Quasi-Contract/Unjust Enrichment 31

Seventh Cause of Action: Negligent Misrepresentation 32

Eighth Cause of Action: Intentional Misrepresentation 33

VII. Relief. 34

**I. Introduction.**

1. When a product is advertised as being on sale, this drives purchases. And there is nothing wrong with a legitimate sale. But some companies take advantage of consumers with fake sales: deceptive sales that aren't really discounts off the true regular price. To protect consumers, the law prohibits such deceptive sales.

2. Defendant Goose Creek Candles LLC ("Goose Creek" or "Defendant") makes, markets, and sells candles, wax melts, fragrances, lotions, creams, and other home fragrance and body care products (the "Goose Creek Products" or "Products"). The Products are sold online through Defendant's website, www.goosecreekcandle.com.

3. On its website, Defendant lists purported regular prices and offers steep discounts from those listed regular prices, for example by including the sale price in larger red font on top of the regular price which is in smaller gray font or by striking through the regular price. Examples are shown below:






4. But Defendant does not sell its Products for the listed "Regular" or strikethrough price. The list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are always available for much less than that.

5. As described in greater detail below, Ms. McCaskill bought Products from Defendant from its website, www.goosecreekcandle.com. Defendant represented that the Products Ms. McCaskill purchased were being offered at a discount from the purported regular prices that Defendant advertised. And based on Defendant's representations, Ms. McCaskill believed that she was purchasing Products whose regular price and market value were the purported list prices that Defendant advertised and that she was receiving substantial discounts. These reasonable beliefs are what caused Ms. McCaskill to buy from Defendant when she did.

6. The representations Ms. McCaskill relied on, however, were not true. The purported regular price was not the true regular price that Defendant sells the Product for and the purported discount was not the true discount. Had Defendant been truthful, Ms. McCaskill and other consumers like her would not have purchased the Products, or would have paid less for them.

7. Plaintiff brings this case for herself and the other California customers who purchased Goose Creek Products advertised at a purported discount.

**II. Parties.**

8. Plaintiff Georgianne McCaskill is domiciled in Rialto, CA.

9. The proposed class includes citizens of California.

10. Defendant Goose Creek Candles LLC is a Kentucky corporation with its principal place of business at PO Box 352, Liberty, KY 42539.

**III. Jurisdiction and Venue.**

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the

matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

12. The Court has personal jurisdiction over Defendant because Defendant sold Goose Creek Products to consumers in California, including to Plaintiff.

13. Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Goose Creek Products to consumers in California and this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV. Facts.

### A. Defendant's fake sales and discounts.

14. Defendant Goose Creek makes, markets, and sells candles, wax melts, fragrances, lotions, creams, and other home fragrance and body care products. Goose Creek sells its Products directly to consumers online, through its website, www.goosecreekcandle.com.

15. On its website, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

16. At any given time, on the product pages of its website, Defendant advertises discounts on its Products. Advertisements from early 2022 show a sale price in large, red font. Underneath the sale price and labeled "Regular" was a higher price in smaller gray font. For example:




*Captured May 20, 2022 (All Candles Product Page)*

17. By the end of 2022, Defendant had started advertising its purported regular prices in strikethrough, next to the supposed sale prices The strikethrough was used to convey the same thing the word "regular" previously conveyed: that this was the purported regular (and former) price. For example, the images below show the same product, with the same purported "regular" and strikethrough price of $25.50. The representation about the regular price, and the purported discount off that price, is materially the same.




*Captured May 20, 2022*




*Captured March 7, 2023*

18. Defendant advertises these discounts on each of its product pages (for example, the product pages for All Candles, All Bodycare Products, New Arrivals, The Smurfs, etc.). Example screenshots are provided on the following pages:




*Captured March 2, 2024 (New Arrivals Product Page)*




*Captured April 30, 2025 (All Bodycare Products Page)*




*Captured July 18, 2025 (The Smurfs Page)*

19. The strikethrough price and purported discounts also appear on individual product pages:




*Captured July 21, 2025*




*Captured July 23, 2025*




*Captured July 23, 2025*




*Captured July 23, 2025*

20. And when a consumer adds an item to their cart, the cart shows the strikethrough price and the supposedly discounted price. Example:




21. Plaintiff's counsel investigated Defendant's historical website sales practices using the Internet Archive's Wayback Machine (available at www.archive.org).[1] That investigation confirms that Defendant's use of false reference prices has persisted continuously since May 2022. For example, 30 randomly selected screenshots of product pages from Defendant's website were collected from the Internet Archive's Wayback Machine and directly from Defendant's website, from 2022-2025. Every single one of those screenshots shows the use of false reference pricing in the ways described above.

22. A false reference price is just what it sounds like. It is a deceptive marketing tactic where a retailer advertises a higher "regular," or "list" price next to a lower sale price to create the illusion of a discount. In reality, the product was never sold at the inflated reference price.. Defendant's website lists fake regular prices and fake discounts.

23. For one example of how Defendant uses false reference prices, on June 24, 2022, Defendant advertised a discount on an Angel Food Cake Large 3-Wick Candle. As part of this discount, Defendant claimed that the "Regular" price (in small gray font) was $25.50 and that the "Sale" price (in bigger, bolder, brighter red font) was $8.99.

---

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/




Angel Food Cake Large 3-Wick Candle

88 reviews

Sale $8.99

Regular $25.50

24. For another example of how Defendant uses false reference prices, on March 2, 2024, Defendant advertised a discount on an Apricot Strawberry Shortcake 3-wick candle. As part of this discount, Defendant listed the purported regular price in strikethrough font right next to the supposedly discounted price. Defendant represented that the strikethrough or regular price was $25.50 and the discounted price was $13.99.




25. But the truth is, the listed regular price of $25.50 is not the regular price for either product. Instead, the purported regular price is much lower, because Defendant always offers discounts on all of its products. As a result, this product was not actually on sale and Defendant's customers did not receive the promised discount. They received a much lower discount, or no discount at all.

26. Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing. In other words, it leads reasonable consumers to believe that they will get a Product worth X at a discounted, lower price Y.

27. Goose Creek also sells some of its products at Walmart. But there, the prices are even cheaper than the supposedly discounted prices offered on the Goose Creek website. For example, the "Goose Creek Vanilla Bean Scented 3-Wick Jar Candle 14.5oz" is currently $12.88 on the Walmart website.




*Captured July 21, 2025*

28. But on the Goose Creek website, Goose Creek claims that this product has a regular price of $25.50 and its purported discounted price is $13.99:




*Captured July 21, 2025*

29. The truth is, it's never regularly sold (or sold at all) at $25.50. That reference price is made up.

30. What is true of this example is true of other Goose Creek Products sold at Walmart – Walmart does not sell them for the purported regular price listed on the Goose Creek website (or for anything close to that price). This is not surprising, as prices charged on third-party websites and by third-party retailers converge on Defendant's price, especially since the Products are sold in an e-commerce market and Defendant, the manufacturer, sells the Products directly to consumers through its publicly available website.

31. Based on Defendant's advertisements on the Goose Creek website, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendant's website before the offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe

that, prior to the sale, consumers buying from Defendant on its website had to pay the list price to get the item and did not have the opportunity to get a discount from that list price.

32. Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant always offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells. And, the list prices do not represent the true market value for the Products, because Defendant's Products are always available for less than that on Defendant's website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discounts the customers are receiving, and are often not a discount at all.

**B. Defendant's advertisements are unfair, deceptive, and unlawful.**

33. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

34. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

35. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and

specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

36. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons." 16 C.F.R. § 233.1.

37. And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. See Cal. Bus. & Prof. Code § 17200.

38. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful, unfair, and deceptive business practices.

**C. Defendant's advertisements harm consumers.**

39. Based on Defendant's advertisements, reasonable consumers would expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products and that these are former prices that Defendant sold its Products at before the discount was introduced.

40. Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised

list price and that they will receive the advertised discount from the regular purchase price.

41. In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

42. By definition, reasonable consumers expect a sale to be time-limited (otherwise, it is not a sale, it is just the regular price).

43. Putative class members are still not aware of Defendant's fake sale scheme. Absent class members will learn of the scheme for the first time upon court-ordered class notice in this case.

44. Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[2] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3]

45. Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to

---

[2] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[3] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

Defendant's misrepresentations, Plaintiff and the Class paid more for the Products they bought than they otherwise would have.

**D. Plaintiff was misled by Defendant's misrepresentations.**

46. According to her receipt, on or around December 8, 2024, Ms. McCaskill purchased several candles from Defendant's website, www.goosecreekcandle.com. She purchased the following candles:



| Qty | Item | Price |
|---|---|---|
| 1 | North Pole Bakery 3-Wick Candle | $8.99 |
| 1 | Snow Covered Trees Large 3-Wick Candle | $8.99 |
| 1 | Old Fashioned Cinnamon Large 3-Wick Candle | $9.99 |
| 1 | Old Fashioned Cinnamon Large 3-Wick Candle | $9.99 |
| 1 | Classic Christmas Tree 3-Wick Candle | $9.99 |
| 1 | Snow Covered Trees Large 3-Wick Candle | $8.99 |
| 1 | North Pole Bakery 3-Wick Candle | $8.99 |

47. As illustrated above, the Goose Creek website represented that the candles she purchased had regular prices that were much higher than what she was paying. In particular, at the time the candles were advertised with strikethrough prices, in the way shown above. For example, below is the candles page on December 8, 2024. The candles purchased by Ms. McCaskill similarly showed a purported regular price of about $25, which a substantial purported discount (to $8.99 or $9.99).




48. Ms. McCaskill read and relied on Defendant's representations on the website, specifically that the Products were being offered at a discount. Based on Defendant's representations described and shown above, Ms. McCaskill reasonably understood that Defendant regularly sold the Products she was purchasing at the published regular prices, that these regular prices were the market value of the Products that she was buying, that she was receiving the advertised discounts as compared to the regular prices.

49. Plaintiff would not have made her purchase, at the price she paid, if she had known that the Product was not really discounted, and that she was not receiving the advertised discounts.

50. In reality, as explained above, Defendant's products, including the Products that Ms. McCaskill purchased, were always available at a discounted price of off the purported regular prices. In other words, Defendant did not regularly sell the Products Ms. McCaskill purchased at the purported regular price, and the Products were not discounted as advertised. Defendant's products are always purportedly on sale.

51. Ms. McCaskill only discovered that the sales were permanent in June 2025, in connection with her counsel's investigation of this case. Plaintiff and other reasonable consumers are not fake sale detectives. Reasonable consumers are not monitoring the website every day for months or years. And even a consumer who occasionally checks the website would reasonably believe that there happened to be another legitimate sale. As illustrated above, discovering Defendant's deception required extensive mining of internet archives.

52. Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices were honest and that its sales were real. But without a court injunction ordering Defendant to only advertise honest regular prices and honest sales, Plaintiff is unable to rely on Defendant's sales or supposed regular prices in the future, and so cannot purchase Products she would otherwise like to purchase.

### E. Defendant breached its contract with and warranties to Ms. McCaskill and the putative class.

53. When Ms. McCaskill, and other members of the putative class, purchased and paid for the Goose Creek Products that they bought, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

54. Defendant's website lists the market value of the items that Defendant promised to provide. Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Ms. McCaskill and putative class members. For example, Defendant offered to provide Ms. McCaskill (among other things) the candles she purchased at a discount to the regular price. Defendant also warranted that the regular price and market value of the Products Ms. McCaskill purchased was the advertised list price (e.g., the "Regular" and strikethrough prices) and warranted that Ms. McCaskill was receiving a specific discount on the Products.

55. The regular price and market value of the items Ms. McCaskill and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

56. Ms. McCaskill and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

57. Defendant breached its contract by failing to provide Ms. McCaskill and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendants also breached warranties for the same reasons.

**F. No adequate remedy at law.**

58. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

59. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market

price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

60. In addition, to obtain a full refund as damages, Plaintiff must show that the Product she bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain that obtaining a refund in equity.

61. Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

62. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Products from Defendant again in the future if they could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, they are unable to rely on Defendant's advertising in the future, and so cannot purchase Products they would like to purchase

## V. Class Action Allegations.

63. Plaintiff brings the asserted claims on behalf of the following proposed class:

- California Class: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Goose Creek Products advertised at a discount on Defendant's website.

64. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2)

Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity***

65. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class members.

***Predominance of Common Questions***

66. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

***Typicality & Adequacy***

67. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased Goose Creek Products advertised at a discount on Defendant's website. There are no conflicts of interest between Plaintiff and the class.

***Superiority***

68. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of tens or

hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

**<u>First Cause of Action</u>:**

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

**(By Plaintiff and the California Class)**

69. Plaintiff incorporates each and every factual allegation set forth above.

70. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

71. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

72. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Class members.

73. As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, ~~$25.50~~) and displaying it next to a lower, discounted price or by identifying prices as either "Regular" prices or "Sale" prices. Reasonable consumers would understand both prices advertised in strikethrough font and those labeled as "Regular" prices from which discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the discount went into effect.

74. The prices advertised by Defendant are not Defendant's regular prices. In fact, those prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question) because there is always a promotion ongoing entitling consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former

prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading.

75. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

76. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Goose Creek Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

77. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Goose Creek Products.

78. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

79. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

80. For the claims under California's False Advertising Law, Plaintiff seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the

form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**<u>Second Cause of Action</u>:**

**Violation of California's Consumer Legal Remedies Act (By Plaintiff and the California Class)**

81. Plaintiff incorporates each and every factual allegation set forth above.

82. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

83. Plaintiff and the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

84. Plaintiff and the Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

85. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

86. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

87. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

88. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

89. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

90. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning the existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of Products on its website and (2) advertising discounts and savings that are exaggerated or nonexistent.

91. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

92. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Goose Creek Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

93. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Goose Creek Products.

94. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

95. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

96. Under California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and the Class, seeks injunctive relief. As addressed next, Plaintiff is not seeking any monetary relief, under the CLRA, until the notice period elapses.

97. CLRA § 1782 NOTICE. On July 8, 2025, a CLRA demand letter was sent to Defendant's principal place of business and to its registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendant does not fully correct the problem for Plaintiff and for each member of the California Class within 30 days of receipt, Plaintiff and the California Class will seek all monetary relief allowed under the CLRA.

98. A CLRA venue declaration is attached.

**<u>Third Cause of Action</u>:**

**Violation of California's Unfair Competition Law**

**(By Plaintiff and the California Class)**

99. Plaintiff incorporates each and every factual allegation set forth above.

100. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

101. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

102. Defendant engaged in unlawful conduct by violating the FTC's regulations, the CLRA, and the FAL as alleged above and incorporated here.

***The Deceptive Prong***

103. As alleged in detail above, Defendant's representations that its Products were on sale, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

104. Defendant's representations were misleading to Plaintiff and other reasonable consumers.

105. Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

106. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the Products had a specific regular price, and that the customers were receiving discounts.

107. Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

108. The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

109. Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

110. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

111. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Goose Creek Products. Defendant's representations were a substantial factor in Plaintiff's purchase decision.

112. In addition, Class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Goose Creek Products.

113. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class members.

114. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

115. For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Fourth Cause of Action:**

**Breach of Contract**

**(By Plaintiff and the California Class)**

116. Plaintiff incorporates each and every factual allegation set forth above.

117. Plaintiff brings this cause of action on behalf of herself and the California Class.

118. Plaintiff and Class members entered into contracts with Goose Creek when they placed orders to purchase Products on Defendant's website.

119. The contracts provided that Plaintiff and Class members would pay Goose Creek for the Products ordered.

120. The contracts further required that Goose Creek provides Plaintiff and Class members with Products that have a market value equal to the regular prices displayed on the website. They also required that Goose Creek provides Plaintiff and

Class members with the discount advertised on the website. These were specific and material terms of the contract.

121. The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and Class members at the time they placed their orders.

122. Plaintiff and Class members paid Goose Creek for the Products they ordered, and satisfied all other conditions of their contracts.

123. Goose Creek breached its contracts with Plaintiff and Class members by failing to provide Products that had a market value equal to the regular price displayed on its website, and by failing to provide the promised discount. Goose Creek did not provide the discount that Goose Creek had promised.

124. As a direct and proximate result of Defendant's breaches, Plaintiff and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

125. Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's registered agent and to Defendant's Kentucky Headquarters on July 8, 2025.

126. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## Fifth Cause of Action:

## Breach of Express Warranty

## (By Plaintiff and the California Class)

127. Plaintiff incorporates each and every factual allegation set forth above.

128. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

129. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Goose Creek Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on

Defendant's website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

130. This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

131. In fact, Goose Creek Products' stated market value was not the prevailing market value. Thus, the warranty was breached.

132. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's registered agent and to Defendant's Kentucky Headquarters on July 8, 2025.

133. Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

134. For their breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**<u>Sixth Cause of Action</u>:**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiff and the California Class)**

135. Plaintiff incorporates each and every factual allegation set forth above.

136. Plaintiff brings this cause of action in the alternative to her Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the California Class.

137. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the Class to purchase Goose Creek Products and to pay a price premium for these Products.

138. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

139. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other Class members are void or voidable.

140. Plaintiff and the Class seek restitution, and in the alternative, rescission.

141. For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(By Plaintiff and the California Class)**

142. Plaintiff incorporates each and every factual allegation set forth above.

143. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

144. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and California Class members concerning the existence and/or nature of the discounts and savings advertised on its website.

145. These representations were false.

146. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

147. Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

148. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Goose Creek Products.

149. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and California Class members.

150. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

151. For the negligent misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Eighth Cause of Action:**

**Intentional Misrepresentation**

**(By Plaintiff and the California Class)**

152. Plaintiff incorporates each and every factual allegation set forth above.

153. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

154. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and California Class members concerning the existence and/or nature of the discounts and savings advertised on its website.

155. These representations were false.

156. When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

157. Defendant intended that Plaintiff and California Class members rely on these representations and Plaintiff and California Class members read and reasonably relied on them.

158. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Goose Creek Products.

159. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and California Class members.

160. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

161. For the intentional misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**VII. Relief.**

162. Plaintiff seeks the following relief for herself and the Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## **Demand For Jury Trial**

163. Plaintiff demands the right to a jury trial on all claims so triable.

Dated: July 25, 2025

Respectfully submitted,

By: <u>*/s/ Jonas Jacobson*</u>

Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Vivek Kothari (Cal. Bar No. 262842)
vivek@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*