**FREEMAN MATHIS & GARY, LLP**
FREDRICK A. HAGEN / SBN 196220
Fred.Hagen@fmglaw.com
KAYLI E. CLIFFORD / SBN 367414
Kayli.Clifford@fmglaw.com
1850 Mt. Diablo Blvd., Suite 510
Walnut Creek, CA 94596
Tel: 925-644-0887

Attorneys for Defendant
Goose Creek Candles LLC,

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Georgianne McCaskill, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>Goose Creek Candles LLC,<br><br>Defendant. | Case No. 5:25-cv-01924 -FMO-MBK<br><br>*Judge Fernando M. Olguin*<br><br>**DEFENDANT GOOSE CREEK CANDLES LLC'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed Concurrently with Declaration of Frederick Hagen; Declaration of Chad Wadlington; Declaration of Jordan Meece; and [Proposed] Order]* |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on that on November 19, 2026, at 10 a.m., Courtroom 6D, or as soon thereafter as the matter may be heard, Defendant Goose Creek Candles, LLC will move this Court, under the Federal Arbitration Act, 9 U.S.C. sections 1 through 4, to compel arbitration of all claims asserted by Plaintiff Georgianne McCaskill and to stay these proceedings pending the completion of arbitration.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Fredrick Hagen, Chad Wadlington, and Jordan Meece filed concurrently herewith, the pleadings and papers on file, and any matter properly before the Court.

Dated: October 20, 2026

**FREEMAN MATHIS & GARY, LLP**

Fredrick A. Hagen
Attorneys for Defendant
Goose Creek Candles, LLC

# TABLE OF CONTENTS

I. INTRODUCTION ..... 5

II. FACTUAL BACKGROUND ..... 6

A. Plaintiff Allegations ..... 6

B. The Terms of Use include Arbitration and Class Waiver Provisions ..... 6

C. Plaintiff Assented to Goose Creek's Terms of Use ..... 6

III. LEGAL STANDARD ..... 9

IV. ARGUMENT ..... 10

A. Plaintiff Assented to the Arbitration and Class Waiver Provisions Through Her Enrollment in Goose Creek's Coupon-Subscription Program. ..... 10

1. *The Enrollment Screen Gave Plaintiff Conspicuous Notice of the Terms, including the Arbitration and Class Waiver Terms.* ..... 11

2. *Plaintiff Assented to the Terms by Entering Her Phone Number, Clicking the Subscription Button, and Enrolling in the Program.* ..... 11

B.The Arbitration Agreement Encompasses All of Plaintiff's Claims ..... 12

C.Questions of Arbitrability Were Delegated to the Arbitrator. ..... 12

D. The Class-Action Waiver is Enforceable. ..... 12

E. The Agreement Is Not Unconscionable. ..... 13

V. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000) .......... 14

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......... 10, 14, 15

*Berman*, 30 F.4th .......... 12

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) .......... 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) .......... 11

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985) .......... 11

*Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025) .......... 12

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000) .......... 14

*Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024) .......... 11, 12

*Lamps Plus, Inc. v. Varela*, 587 U.S. 176 (2019) .......... 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) .......... 13

*Nguyen*, 763 F.3d .......... 12

*OTO, L.L.C. v. Kho*, 8 Cal. 5th 111 (2019) .......... 14

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) .......... 11, 13

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 289 Cal. Rptr. 3d 1 (2021) .......... 11

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) .......... 13

**Statutes**

9 U.S.C. sections 1 through 4 .......... 2

9 U.S.C. § 2 .......... 11

9 U.S.C. § 4 .......... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff brings this sweeping class action lawsuit based on a December 8, 2024, purchase of seven candles from Goose Creek's website. But before making that purchase, Plaintiff enrolled in Goose Creek's promotional coupon program on December 3, 2024, entering her telephone number and clicking the subscription button. On that enrollment screen, adjacent to the subscription button, Plaintiff was expressly advised that taking those steps would bind Plaintiff to Goose Creek's linked Terms of Service ("Terms"). The relevant Terms require arbitration of this dispute, waive class and representative proceedings and assign threshold arbitrability questions to the arbitrator.

After being expressly advised of Goose Creek's Terms, Plaintiff chose to subscribe, agreed to Goose Creek's Terms, and made the December 8, 2024, purchase at issue. Plaintiff also purchased candles from Goose Creek's website on December 4, 2024, four days before the transaction alleged in the Complaint. Thus, Plaintiff used the promotional coupon codes from her then active Goose Creek subscription to make the December 4 and December 8 purchases, while bound to Goose Creeks' Terms.

By subscribing to Goose Creek's promotional program, Plaintiff assented to Goose Creek's Terms. Plaintiff therefore agreed to arbitration and class waiver before making the purchase at issue. The enrollment process required affirmative action and explicitly connected that action to acceptance of the Terms. All Plaintiff's claims arise from the Goose Creek subscriber relationship, access to Goose Creek promotions, and the subsequent purchases covered by those Terms. Pleading them as a putative class action does not displace the agreed method of resolving them, especially given the class waiver provision. Goose Creek asks the Court to enforce Plaintiff's express bargain and compel arbitration, enforce the class waiver, and stay this action pending arbitration.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Allegations

Plaintiff brings a putative class action arising from the purchase of Goose Creek candles through Defendant's website. She alleges that Goose Creek advertised products at discounts from purported regular prices and that she relied on those representations when purchasing. (Compl. ¶¶ 1–7, 46, 48.) The Complaint alleges claims under California's False Advertising Law, Consumer Legal Remedies Act, and Unfair Competition Law, as well as claims for breach of contract, breach of express warranty, unjust enrichment, negligent misrepresentation, and intentional misrepresentation. Importantly, Plaintiff also alleges that a contract was formed each time she purchased and paid for Goose Creek products. (Compl. ¶ 53.)

### B. The Terms of Use include Arbitration and Class Waiver Provisions

Goose Creek's Terms of Use section 17 requires any dispute arising out of or in any way related to the Terms to be resolved by binding arbitration before the American Arbitration Association. (Wadlington Decl. ¶ 3, Ex. D § 17.2.) The Terms state that the FAA governs and that the arbitration will be administered under the applicable AAA procedures. (Wadlington Decl. ¶ 3, Ex. D § 17.4.) Section 17 also provides that the arbitrator has exclusive authority to resolve disputes concerning the interpretation, applicability, or enforceability of the arbitration agreement. (Wadlington Decl. ¶ 3, Ex. D § 17.4.) The Terms further require claims to proceed only on an individual basis and prohibit class or representative proceedings. (Wadlington Decl. ¶ 3, Ex. D § 17.3.)

### C. Plaintiff Assented to Goose Creek's Terms of Use

Goose Creek's vendor subscription-system record reflects Plaintiff's enrollment in its promotional text-message program on December 3, 2024, before her December 4 and December 8, 2024, purchases, and her opt-out on January 5, 2025. (Meece Decl. ¶¶ 7–9, Exs. B–C.)

///

***See* Meece Decl. ¶ , Exhibit C**




Goose Creek located the corresponding subscription record using the telephone number Plaintiff provided in connection with her orders. (Meece Decl. ¶¶ 8–9, Ex. C.) The subscription program did not enroll consumers automatically.

***See* Meece Decl. ¶ , Exhibit A, pg. 1**



The mobile interface required a consumer to enter a telephone number and affirmatively click the subscription button to request enrollment. Immediately below the telephone-number field and subscription button, the interface advised consumers that, by providing a telephone number and clicking the button, they agreed to receive recurring promotional text messages and also agreed to Goose Creek's Terms of Service and Privacy Policy. Both references were visibly underlined and linked, making them available for review before enrollment. (Meece Decl. ¶¶ 3–4, 6, Ex. A.) The disclosure connecting subscription with acceptance of the Terms of Service appeared on the same screen and at the point of submission, including on December 3, 2024. (Meece Decl. ¶¶ 5–6, Ex. A.)

***See* Meece Decl. ¶ , Exhibit A, pg. 2**




The Terms available to customers on December 3, 2024, included Section 17.2, requiring binding arbitration before the American Arbitration Association in Kentucky for "any dispute arising out of or in any way related to" the Terms; Section 17.3, requiring claims to be brought only in an individual capacity and prohibiting class or representative proceedings absent a signed agreement; and Section 17.4,

providing that the FAA and applicable AAA procedures govern and that the arbitrator has exclusive authority to resolve disputes concerning the interpretation, applicability, or enforceability of the arbitration agreement. (Wadlington Decl. ¶ 3, Ex. D §§ 17.2–17.4.)

After enrolling on December 3, 2024, Plaintiff made purchases on December 4 and December 8, 2024. Goose Creek's order records reflect the use of coupon codes in connection with both purchases. (Meece Decl. ¶¶ 7–9, Exs. B–C.)

***See* Meece Decl. ¶ 7, Ex. B, pg. 5, order record for the December 4, 2024 purchase.**




***See* Meece Decl. ¶ 7, Ex. B, pg. 3, order record for the December 8, 2024 purchase.**




Plaintiff's recorded enrollment, followed by using the coupon-code program benefit on both purchases, shows that she affirmatively subscribed and manifested assent through the enrollment process.

## III. LEGAL STANDARD

The Federal Arbitration Act establishes a strong federal policy favoring arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract." 9 U.S.C. § 2. This provision reflects both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract. *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 67 (2010).

To determine whether parties must arbitrate a dispute, courts generally apply a two-step analysis. First, the court must determine whether a valid agreement to arbitrate exists. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Second, if the court finds that such an agreement exists, the court must determine whether the agreement encompasses the dispute at issue. *Id.* Both questions are for the court to decide unless the parties clearly and unmistakably provide otherwise. *Id.* Once these requirements are satisfied, the Court must compel arbitration according to the agreement's terms. 9 U.S.C. § 4; *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## IV. ARGUMENT

### A. Plaintiff Assented to the Arbitration and Class Waiver Provisions Through Her Enrollment in Goose Creek's Coupon-Subscription Program.

Online agreements fall into two general categories: clickwrap agreements and browse-wrap agreements, and sign-in agreements. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). "'Sign-in-wrap' agreements are those in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service. While a link to the separate agreement is provided, users are not required to indicate that they have read the agreement's terms before signing up." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 464, 289 Cal. Rptr. 3d 1, 15 (2021).

Under California law, a sign-in wrap agreement may be an enforceable contract based on inquiry notice if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously

manifests his or her assent to those terms." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024).

***1. The Enrollment Screen Gave Plaintiff Conspicuous Notice of the Terms, including the Arbitration and Class Waiver Terms.***

The notice was conspicuous because it appeared immediately below the subscription mechanism, expressly tied subscription to agreement, and displayed a visible, underlined link to the Terms. (Meece Decl. ¶¶ 4–6, Ex. A.) The mobile interface advised consumers that providing a telephone number and clicking the subscription button constituted agreement to the linked Terms of Service. Program enrollment required those affirmative steps and did not occur automatically. (Meece Decl. ¶¶ 3–6, Ex. A.) This was not a passive hyperlink buried in a footer or placed near an unrelated button. *See Nguyen*, 763 F.3d at 1178–79. Nor did the interface merely reference terms without advising that the user's next action constituted assent. *Cf. Godun v. JustAnswer LLC*, 135 F.4th 699, 708–12 (9th Cir. 2025). This presentation provides clear notice of the Terms of Use and is readily distinguishable from *Nguyen v. Barnes & Noble Inc.*, where the terms were merely placed near actionable buttons without any accompanying language alerting users to their significance. 763 F.3d at 1177 (9th Cir. 2014).

**2.** ***Plaintiff Assented to the Terms by Entering Her Phone Number, Clicking the Subscription Button, and Enrolling in the Program.***

When Plaintiff entered her phone number and pressed of the button connected to the agreement with accompanying language alerting to the Terms of Use significance gave Plaintiff the requisite notice required to assent to the terms of the contract. By taking the precise action the notice identified as assent, Plaintiff objectively agreed to the Terms. *See Keebaugh*, 100 F.4th at 1019–21; *Berman*, 30 F.4th at 857.

Plaintiff's enrollment preceded both challenged purchases, and the order records reflect Plaintiff used the resulting coupon-code program, the benefit of the

contract, on each transaction. (Meece Decl. ¶¶ 7–9, Exs. B–C.)

**B. The Arbitration Agreement Encompasses All of Plaintiff's Claims.**

The arbitration clause broadly covers any dispute "arising out of or in any way related to" the Terms. (Wadlington Decl. ¶ 3, Ex. D § 17.2.) The Ninth Circuit construes such language to reach every dispute having its origin or genesis in the parties' contractual relationship; a claim need only "touch matters" covered by the agreement. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720–21 (9th Cir. 1999). Any doubts concerning scope are resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983). Every claim in the Complaint arises from Plaintiff's relationship and transactions with Goose Creek, including the December 4 and December 8 orders reflected in its records. (Meece Decl. ¶ 7, Ex. B.) Her statutory advertising claims, contract and warranty claims, unjust-enrichment claim, and misrepresentation claims all depend on the same website representations and purchases. They therefore fall within the clause's broad scope.

**C. Questions of Arbitrability Were Delegated to the Arbitrator.**

Section 17.4 gives the arbitrator exclusive authority to resolve disputes concerning the interpretation, applicability, or enforceability of the arbitration agreement. (Wadlington Decl. ¶ 3, Ex. D § 17.4.) Parties may delegate these gateway questions to the arbitrator through clear and unmistakable agreement. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). Section 17.4's express language satisfies that standard. The Terms' incorporation of the AAA rules independently reinforces the delegation. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Unless Plaintiff specifically challenges the delegation provision itself, any dispute regarding the arbitration agreement's validity, enforceability, or scope must be decided by the arbitrator. *Rent-A-Center*, 561 U.S. at 70–72.

**D. The Class-Action Waiver is Enforceable.**

The Terms provide that customers may bring claims against Goose Creek only

in an individual capacity and not as a plaintiff or class member in a purported class or representative proceeding. (Wadlington Decl. ¶ 3, Ex. D § 17.3.) The FAA requires courts to enforce that bilateral arrangement according to its terms. *Concepcion*, 563 U.S. at 344, 352. Class arbitration fundamentally changes the nature of arbitration and cannot be compelled without a contractual basis showing the parties agreed to it. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183–89 (2019).

Here, the agreement expressly rejects class proceedings. Any state-law rule conditioning enforcement on the availability of class procedures is preempted. *Concepcion*, 563 U.S. at 341–52. Plaintiff must therefore pursue any claim only in arbitration solely on an individual basis.

**E. The Agreement Is Not Unconscionable.**

Under California law, unconscionability requires both procedural and substantive elements, evaluated on a sliding scale. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Procedural unconscionability concerns oppression or surprise; substantive unconscionability concerns overly harsh or one-sided results. *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125–26 (2019). Neither is present here. The enrollment process required affirmative steps, with a contemporaneous disclosure advising that subscription constituted agreement to the linked Terms. (Meece Decl. ¶¶ 3–6, Ex. A.)

The arbitration provisions appear in a section expressly addressing dispute resolution, and the Terms describe arbitration, individual proceedings, and the applicable procedures. The agreement also contains consumer-protective fee provisions, including reimbursement of the filing fee for qualifying claims. (Wadlington Decl. ¶ 3, Ex. D § 17.) Plaintiff bears the burden of showing that arbitration costs are likely to be prohibitive, not merely speculative. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90–92 (2000). The record here shows no unfair surprise or likelihood of prohibitive cost. And any challenge premised on the class waiver is foreclosed by *Concepcion*, 563 U.S. at 352.

## V. CONCLUSION

Goose Creek respectfully requests that the Court: (1) compel Plaintiff to arbitrate all claims on an individual basis before the AAA in accordance with the Terms; (2) enforce the class-action waiver; (3) stay this action pending completion of arbitration.

Dated: October 20, 2026

**FREEMAN MATHIS & GARY, LLP**

Fredrick A. Hagen
Attorneys for Defendant
Goose Creek Candles, LLC

**Certificate of Compliance**

The undersigned, counsel of record for Goose Creek Candles, LLC, certifies that this brief contains 2336 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 20, 2026

**FREEMAN MATHIS & GARY, LLP**

Fredrick A. Hagen
Attorneys for Defendant
Goose Creek Candles, LLC